No. 21-51083

# In the United States Court of Appeals for the Fifth Circuit

E.T. BY AND THROUGH HER PARENTS AND NEXT FRIENDS; J.R., BY AND THROUGH HER PARENTS AND NEXT FRIENDS; S.P., BY AND THROUGH HER PARENTS AND NEXT FRIENDS; M.P., BY AND THROUGH HER PARENTS AND NEXT FRIENDS; E.S., BY AND THROUGH HER PARENTS AND NEXT FRIENDS; H.M., BY AND THROUGH HER PARENTS AND NEXT FRIENDS; A.M., BY AND THROUGH HER PARENTS AND NEXT FRIENDS,

*Plaintiffs-Appellees,*

*v.*

KENNETH PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## DEFENDANT'S EMERGENCY MOTION TO STAY INJUNCTION PENDING APPEAL AND FOR A TEMPORARY ADMINISTRATIVE STAY

*(Counsel Listed on Inside Cover)*

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Judd E. Stone II
Solicitor General
Judd.Stone@oag.texas.gov

Michael R. Abrams
Eric J. Hamilton
Assistant Solicitors General

Counsel for Defendant-Appellant Ken
Paxton, Attorney General of Texas

# Certificate of Interested Persons

No. 21-51083

E.T. by and through her parents and next friends; J.R., by and through her parents and next friends; S.P., by and through her parents and next friends; M.P., by and through her parents and next friends; E.S., by and through her parents and next friends; H.M., by and through her parents and next friends; A.M., by and through her parents and next friends,

*Plaintiffs-Appellees,*

*v.*

Kenneth Paxton, in his official capacity as Attorney General of Texas,

*Defendant-Appellant.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellant, as a governmental party, need not furnish a certificate of interested persons.

/s/ Judd E. Stone II
Judd E. Stone II
*Counsel of Record for*
*Defendant-Appellant*

i

## Introduction and Nature of Emergency

A district court permanently enjoined Texas Attorney General Ken Paxton from enforcing Executive Order GA-38, which prohibits governmental entities, including school districts, from requiring individuals to wear masks. The court held that GA-38 violates the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973. The court also held that GA-38 is preempted by both of those laws and by the American Rescue Plan Act of 2021.

The district court committed multiple reversible errors in reaching those holdings. The order violates bedrock standing principles that a plaintiff's injury cannot be self-imposed or conjectural. It misapplies the principle that under the ADA and Section 504, a plaintiff is entitled to a *reasonable* accommodation, not a plaintiff's *preferred* accommodation. And the district court's order is overbroad; it applies to school districts statewide even though plaintiffs made no showing that statewide relief is necessary to remedy their injuries.

This Court should enter a stay pending appeal, and it should immediately enter a temporary administrative stay while it considers this application. Recently, this Court has entered multiple stays pending appeal and temporary administrative stays of "patently wrong" district court orders like the one the court entered in this case. *See, e.g.*, *In re Abbott*, 954 F.3d 772, 781 (5th Cir. 2020); *In re Abbott*, 809 F. App'x 200, 201 (5th Cir. 2020); *Valentine v. Collier*, 956 F.3d 797, 801, 806 (5th Cir. 2020). It should do the same here.

## Background

On July 29, 2021, Governor Greg Abbott issued Executive Order GA-38, which generally forbids local government entities, including public school districts, from requiring individuals to wear masks.[1] Exhibit A at 5. GA-38 strikes a balance between "the ability of Texans to preserve livelihoods" and "protecting lives" through "the least restrictive means of combatting the evolving threat to public health." *Id.* at 2, 4. It "strongly encourage[s] [Texans] as a matter of personal responsibility to consistently follow good hygiene, social-distancing, and other mitigation practices," but it also provides that "no person may be required by any jurisdiction to wear or to mandate the wearing of a face covering." *Id.* at 2, 4.

Plaintiffs are seven students who have disabilities and are enrolled in Texas public schools. Exhibit B at 8-9, 26-31. They brought this challenge to GA-38 under the ADA and Section 504 against the Texas Education Agency's Commissioner, the Texas Education Agency (TEA), and the Attorney General.[2] *Id.* at 2, 9-10. They sought a declaration that GA-38 violates federal law and is preempted. *Id.* at 39. They also requested that the district court enjoin enforcement of GA-38 statewide. *See id.* In turn, Defendants filed a motion to dismiss arguing that plaintiffs lack standing and

---

[1] Executive Order GA-36, which the Governor issued on May 18, 2021, contains a similar prohibition on mask mandates. Executive Order GA-36, 46 Tex. Reg. 3325, 3325 (May 18, 2021).

[2] There is pending litigation in multiple Texas state courts regarding GA-38's validity under state law. *See, e.g.*, *Abbott v. City of San Antonio*, No. 04-21-00342-CV, 2021 WL 5217636, at *1 (Tex. App—San Antonio Nov. 10, 2021). The Supreme Court of Texas has not yet issued a decision on that issue but has repeatedly stayed lower court orders enjoining the enforcement of GA-38. *See, e.g.*, Order at 1, *In re Abbott*, No. 21-0720 (Tex. Aug. 26, 2021).

that their claims are not justiciable. Exhibit C at 2, 8 (describing Defendants' motion to dismiss).

Rather than rule on the motion to dismiss, including the issue of subject-matter jurisdiction, the district court held the motion in abeyance and proceeded to hold a bench trial on October 6, 2021. On November 10, 2021, the district court issued a memorandum opinion incorporating findings of fact and conclusions of law and ruling on Defendants' motion to dismiss. *Id.* at 28-29. The court agreed with Defendants that the TEA and its Commissioner are not proper parties. *Id.* at 9-11. But the district court found that plaintiffs had standing to sue the Attorney General. *Id.* at 11-15. On the merits, the court held that GA-38 is preempted by the ADA, Section 504, and the American Rescue Plan Act of 2021 and that GA-38 violates both the ADA and Section 504. *Id.* at 17-28. The district court then issued the following permanent injunction: "Having concluded that GA-38 violates and is preempted by federal law, the court will permanently enjoin Paxton from enforcing or giving any effect to the provisions of GA-38 prohibiting school districts from requiring masks." *Id.* at 29.

The day after the district court issued is opinion, the Attorney General sought a stay of the injunction pending appeal. ECF No. 85. On November 22, 2021, the district court denied the motion, concluding that the Attorney General failed to make a sufficient showing to warrant a stay pending appeal. ECF No. 90 at 2; *see* Fed. R. App. P. 8(a)(2).

## Statement of Jurisdiction

This Court has appellate jurisdiction over the district court's permanent injunction under 28 U.S.C. § 1291.

## Argument

"An appellate court's power to hold an order in abeyance while it assesses the legality of the order has been described as 'inherent.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009) (citation omitted). All four factors relevant to a stay are met here: (1) the Attorney General is likely to succeed on the merits; (2) he will suffer irreparable harm in the absence of a stay; (3) plaintiffs will not be substantially harmed by a stay; and (4) the public interest favors a stay. *See id*.

## I.  The Attorney General Is Likely to Succeed on Appeal.

The Attorney General is likely to succeed on appeal for four reasons. *First*, plaintiffs lack standing because their injuries are either self-imposed or depend on a series of contingencies that may never materialize. *Second*, plaintiffs are unlikely to succeed on their claims under the ADA and Section 504. It is undisputed that no plaintiff has requested a reasonable accommodation, let alone brought a request to their school district for a schoolwide mask mandate. And even if they had, the ADA and Section 504 do not impose a preferred accommodation requirement. Instead, the relevant inquiry is whether an accommodation is reasonable. And plaintiffs did not demonstrate how the options available to them are unreasonable or fail to afford them meaningful access to educational opportunities. *Third*, GA-38 is not preempted by federal law because it does not prevent school districts from complying with their

obligations under the ADA, Section 504, or the American Rescue Plan Act. *Fourth*, the injunction vastly exceeds the scope of the violations that the district court found.

## A. Plaintiffs lack standing.

To invoke the Court's jurisdiction, plaintiffs must demonstrate a "concrete and particularized" injury that is fairly traceable to the actions of the Attorney General and redressable by an order enjoining his conduct. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (injury must be "concrete" and "particularized"). The threatened injury must be "actual" or "imminent"; "allegations of possible future injury are not sufficient." *Id.* (citation and internal quotation marks omitted). And because "this case was tried, Plaintiffs needed to prove standing by a preponderance of the evidence." *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 367 (5th Cir. 2020). Plaintiffs did not meet that burden.

1.     Plaintiffs argued that if they attend in-person classes, they may contract COVID-19, which would put them at increased health risks due to their underlying medical conditions. Exhibit B at 2. But this Court has historically been reluctant to confer standing based on increased-risk-of-harm injuries. *Shrimpers & Fisherman of RGV v. Tex. Comm'n on Env't Quality*, 968 F.3d 419, 424 (5th Cir. 2020). And for good reason: "[m]uch government regulation slightly increases a citizen's risk of injury—or insufficiently decreases the risk compared to what some citizens might prefer." *Id.* (citation omitted). Allowing these kinds of increased-risk claims "would drain the 'actual or imminent' requirement of meaning" and risk expanding "the

'proper—and properly limited'—constitutional role of the Judicial Branch beyond deciding actual cases or controversies." *Id.* (citation omitted).

This suit was filed in August 2021. Since then, the FDA has approved Pfizer's COVID-19 vaccine for school-age children. Thus, every plaintiff is now capable of reducing the risk of a COVID-19 infection through vaccination.[3] Plaintiffs may also benefit from the risk-reducing behavior of their peers who choose to vaccinate or wear masks. And plaintiffs may take advantage of other mitigation measures. They can attend school while wearing a mask. They may also ask their schools to take additional COVID-19 precautions. For example, GA-38 does not prohibit any school from encouraging voluntary masking. Nor does it prevent school staff from voluntarily agreeing to wear a mask to accommodate a student's disability. GA-38 "strongly encourage[s] [Texans] as a matter of personal responsibility to consistently follow good hygiene, social-distancing, and other mitigation practices." *See* Exhibit A at 2. Such mitigation measures would thus be fully consistent with GA-38.

Accordingly, the widespread availability of vaccines, the right to wear a mask, and the possibility of additional mitigation measures make plaintiffs' stated injury—the increased risk of contracting the disease absent a mask mandate—speculative,

---

[3] *See* U.S. Food and Drug Administration, *FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Children 5 through 11 Years of Age* (Oct. 29, 2021), *available at* https://www.fda.gov/news-events/press-announcements/fda-authorizes-pfizer-biontech-covid-19-vaccine-emergency-use-children-5-through-11-years-age (last accessed Nov. 22. 2021). The FDA approved the vaccine for children ages 5 through 11, and each of the plaintiffs fall within that age range. Exhibit B at 8-9.

rather than "actual or imminent." *See Clapper*, 568 U.S. at 409. Indeed, the data that the Attorney General introduced at trial demonstrated that COVID-19 positivity rates did not meaningfully differ between the five school districts at issue that have mask mandates and the two school districts that do not. *See* ECF No. 48 at 8-11; ECF No. 48-1 at 71.

**2.**    Perhaps recognizing that an increased-risk theory would not suffice to confer standing, plaintiffs also argued, and the district court accepted, that their injury is the "deprivation of reasonable access to in-person public schooling." Exhibit C at 14. The district court reasoned that plaintiffs "do not have to show that Paxton's enforcement of GA-38 will actually cause any of them to contract COVID or that they would actually contract COVID in a mask-optional school environment." *Id.*

This basis for standing is on even shakier ground than plaintiffs' increased-risk-of-harm theory because a self-inflicted injury is insufficient for standing purposes. *Glass v. Paxton*, 900 F.3d 233, 238-42 (5th Cir. 2018). And the only reason plaintiffs may be deprived of in-person schooling is if they voluntarily opt to participate in remote learning due to a fear of contracting COVID-19 in a classroom without a mask mandate. Because of the availability of vaccines for children across Texas and other potential methods of mitigating the spread of COVID-19 absent a mask mandate, the decision to opt out of in-classroom learning is necessarily a self-inflicted injury that cannot confer standing. *See id.* (finding that a university professor could not "manufacture standing by self-censoring her speech based on what she alleges to be a reasonable probability that concealed-carry license holders will intimidate professors and students in the classroom.").

**3.** Plaintiffs also failed to show how an injunction against the Attorney General will redress their injuries. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000) (requiring plaintiffs to demonstrate that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."). Plaintiffs claim they lack meaningful access to in-person learning without the possibility of mask mandates in the classroom. But the district court's injunction cannot require a school district without a mask mandate to implement one. The Attorney General has no authority to order a school district to implement a mask mandate and the school districts that could do so were not parties before the district court. Redressing plaintiffs' asserted injuries would require action on the part of the non-party school districts. Thus, it is "speculative" and not "likely" that the district court's injunction will redress plaintiffs' injuries. *Lujan*, 504 U.S. at 561. Without an injury-in-fact that can be redressed by a favorable ruling, plaintiffs lack standing to pursue their claims. The district court did not need to venture any further in resolving this case.

## B.  Plaintiffs did not prove a violation of the ADA or Section 504.

On the merits, the district court wrongly held that GA-38 violates the ADA and Section 504. The district court found that "even if a school were to determine based on an individualized assessment that requiring masks is a reasonable modification necessary to enable a student with disabilities to have equal access to a safe, integrated, in-person learning environment, the school would be prohibited from providing that accommodation under GA-38." Exhibit C at 26. And it cited cases holding that a reasonable modification or accommodation cannot be denied to a

person with a disability solely on the basis that it would violate state law. Exhibit C at 18 (citing *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996); *Barber v. Colo. Dep't of Revenue,* 562 F.3d 1222, 1232-33 (10th Cir. 2009); *Astralis Condo. Ass'n v. HUD*, 620 F.3d 62, 69-70 (1st Cir. 2010)). But the district court failed to recognize that the premise of this chain of reasoning is absent: No plaintiff has been denied a reasonable accommodation or modification because of GA-38. Its holding that GA-38 violates federal law because of a possibility of a denial is entirely speculative.

Indeed, plaintiffs have done little to show they will suffer this harm. As the State pointed out repeatedly at trial, plaintiffs have not even made a request for a reasonable accommodation or modification. Exhibit D at 116-17. Plaintiffs did not rebut that point. "It is the plaintiff's burden to request reasonable accommodations." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). The plaintiffs' failure to make this request is fatal to their claims under both the ADA and Section 504. *See Smith v. Harris County, Tex.*, 956 F.3d 311, 317-18 (5th Cir. 2020) ("When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." (cleaned up)); *see also Campbell v. Lamar Inst. of Tech.*, 842 F.3d 375, 379 (5th Cir. 2016) (noting that courts follow the same general framework for ADA and Section 504 claims).

Even without this defect, plaintiffs could not prevail because they have not been denied "meaningful access" to an education, as is required to support their claims. *See, e.g.*, *Ruskai v. Pistole*, 775 F.3d 61, 78–79 (1st Cir. 2014) (citing *Alexander v.*

*Choate*, 469 U.S. 287, 299 (1985)). Plaintiffs remain free to attend school in person while wearing masks and taking any other COVID-19 precautions they deem appropriate, including vaccination. They are free to request that school staff or other students they interact with voluntarily agree to wear masks. They are free to request a change to the school environment such as the increase of space between students or improved ventilation. Finally, plaintiffs are free to choose to attend school virtually. Considering these options as a whole, plaintiffs have a reasonable and meaningful access to a public education. *Cf. Campbell*, 842 F.3d at 380 ("[a] disabled student does not have a right to his accommodation of preference"); *L.E. v. Ragsdale*, No. 1:21-cv-4076-TCB, 2021 WL 4841056, at \*3 (N.D. Ga. Oct. 15, 2021) (finding the availability of remote learning defeated a plaintiff's ADA-based challenge to a mask mandate).

Plaintiffs are also unlikely to succeed on the merits because they did not exhaust their administrative remedies under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(*l*), which provides extensive procedural safeguards to ensure that each student is provided the free appropriate public education (FAPE) that plaintiffs seek here. 20 U.S.C. § 1400 *et seq.* This exhaustion requirement applies "when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 755 (2017) (IDEA). Under IDEA, plaintiffs had the opportunity to work with their school districts to develop an "individualized education plan" tailored to the student's particular circumstances. 34 C.F.R. §§ 300.320-323. Plaintiffs failed to present any evidence or even make the generalized assertion that

they attempted to work with their individual schools to develop individualized education plans to reduce their risk of exposure to COVID-19. That exhaustion requirement is a prerequisite to their showing of success on the merits of the ADA and Section 504 claims because they complain they cannot access the full benefits of their public-school education. *See* ECF No. 57 at 5-12 (joint stipulated facts listing plaintiffs' concerns, including missing "significant educational opportunities"); *Fry*, 137 S. Ct. at 755; *see also Durbrow v. Cobb Cnty. Sch. Dist.*, 887 F.3d 1182, 1190 (11th Cir. 2018) ("The same misconduct committed by a school district may warrant relief under the IDEA, § 504, or the ADA. But if the complaint essentially alleges the denial of a FAPE, then the plaintiff must exhaust his administrative remedies.").

A stay pending appeal is warranted to allow this Court to address these novel issues raised by district court's decision.

## C.  GA-38 is not preempted.

The district court also erred in holding that federal law preempts GA-38. The court concluded "that to the extent that school districts cannot comply with GA-38's ban on mask requirements and at the same time meet their obligations under the ADA and Section 504, the ADA and Section 504 supersede any conflicting provisions of GA-38." Exhibit C at 19.

Federal law preempts state law if (1) compliance with both state and federal provisions is physically impossible or (2) state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[4]

---

[4] Congress may also expressly preempt a state law or supersede state law altogether through a "scheme of federal regulation so pervasive as to make

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983). The district court assumed that GA-38 prevents school districts from complying with the ADA or Section 504 to some extent. But there is no evidence in the record that plaintiffs sought specific accommodations. This necessarily precludes plaintiffs from demonstrating that GA-38 makes it impossible to comply with federal law or that GA-38 stands as an obstacle to "the full purposes and objectives of Congress." *Id.*

Plaintiffs' Rescue Plan Act claim is similarly flawed. The Act provides funding to "help schools return safely to in-person instruction, maximize in-person instructional time, sustain the safe operation of schools, and address the academic, social, emotional, and mental health impacts of the COVID-19 pandemic on the Nation's students." American Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21195, 21196 (Apr. 22, 2021). The Act does not provide federal funding directly to school districts or other local educational agencies, but channels those funds to the States, and charges the States with oversight of the use of funds by way of reporting requirements. Pub. L. No. 117-2, § 2001(c)-(d).

Plaintiffs cannot assert claims for violations of the Rescue Plan Act because the Act does not create a private cause of action. *See Lamar v. Hutchison*, No. 4:21-CV-00529, 2021 WL 4047158 at * 6 n. 47 (E.D. Ark. Sep. 3, 2021). That alone was reason to reject plaintiffs' Rescue Plan Act claim. Moreover, plaintiffs conceded below that

---

reasonable the inference that Congress left no room to supplement it." *Pac. Gas & Elec. Co.*, 461 U.S. at 203. Neither of these forms of preemption is at issue.

the Rescue Plan Act does *not* compel a school district to institute indoor masking requirements. ECF No. 56 at 67-68. Instead, the Act simply requires a school district to report to the *State* how the district used or considered using funds supplied to the state by the Act. 86 Fed. Reg. 21198-21201. The district court's preemption finding ignores the State's role under the Act and, more broadly, the State's longstanding role in regulating education. *See, e.g.*, Tex. Const. art. VII, § 1 (vesting the Texas Legislature with the duty to "establish and make suitable provision for the support and maintenance of an efficient system of public free schools"). Instead, the district court improperly enlarged federal and local authority in ways unsupported by the plain language of the Act. Indeed, even the Department of Justice, which filed a statement of interest in the case, declined to endorse Plaintiffs' theory that the Rescue Plan Act preempts GA-38. *See* ECF No. 47. For these reasons, plaintiffs' preemption claim is likely to fail on appeal.

**D.  The district court's injunction is not appropriately tailored.**

Even though plaintiffs together attend only seven school districts within the state, the district court issued a statewide injunction. Ex. E at 2 (Final Judgment). The impropriety of a statewide injunction provides an independent reason for a stay.

An injunction "is overbroad if it is not narrowly tailored to remedy the specific action which gives rise to the order as determined by the substantive law at issue." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (cleaned up). The Supreme Court has explained that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (emphasis added) (citation and quotation

marks omitted). "[T]he Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (emphasis in original) (cleaned up).

To the extent the district court was correct on the merits, the court's injunction should have been limited to those schools that plaintiffs attend. And the injunction should have, and could have, been crafted more compactly. The district court's primary holding was that school districts must be permitted to consider a mask mandate as a reasonable accommodation under the ADA and as a COVID-19 safety measure under the Rescue Plan Act. This could be accomplished by a more narrowly tailored injunction: for example, that GA-38 cannot be enforced against a school district that implements a mask mandate as a reasonable accommodation for a student under the ADA or as a safety measure implemented pursuant to Rescue Plan Act funding.

At the very least, the district court had no authority to issue an impermissible writ of erasure enjoining the Attorney General from enforcing GA-38 in school districts *statewide* on behalf of seven plaintiffs who attend school in a handful of school districts. *Madsen*, 512 U.S. at 765. The district court's "sweeping" injunction should thus be stayed pending appeal. *TDP v. Abbott*, 961 F.3d 389, 394 (5th Cir. 2020).

## II.  The Other Factors Favor a Stay.

Enjoining State officials from carrying out validly enacted laws imposes irreparable harm. *Maryland v. King*, 567 U.S. at 1303; *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) ("[A]ny

time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). Here, the injunction inflicts an "institutional injury" from the "inversion of . . . federalism principles." *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016). Federalism principles recognize that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland*, 567 U.S. at 1303 (alterations omitted) (Roberts, C.J. in chambers). The Governor has prohibited mask mandates via executive order since May 2021, and that status quo has held through months of contentious litigation across multiple courts throughout Texas. *See, e.g.*, Order at 1, *In re Abbott*, No. 21-0720 (Tex. Aug. 26, 2021). The status quo should remain in place through the pendency of this appeal. *See Dayton Bd. of Educ. v. Brinkman*, 439 U.S. 1358, 1359 (1978) (Rehnquist, C.J., in chambers) ("[T]he maintenance of the status quo is an important consideration in granting a stay.").

Additionally, a stay will not "substantially injure" plaintiffs. *Nken*, 556 U.S. at 426. Plaintiffs' injury absent an injunction is speculative. They allege that if they attend school in-person, they may contract COVID-19, but plaintiffs are all eligible to receive a COVID-19 vaccine, they may choose to wear masks, and they may ask their schools to implement voluntary mitigation measures. The district court held that the plaintiffs' injury is the "deprivation of reasonable access to in-person public schooling." Exhibit C at 14. But any plaintiff choosing not to attend school in-person while the injunction is stayed would create a self-inflicted injury. This Court has recognized that "a party may not satisfy the irreparable harm requirement if the

harm complained of is self-inflicted." *State v Biden*, 10 F.4th 538, 558 (5th Cir. 2021) (citation omitted); *Second City Music, Inc. v. City of Chicago*, 333 F.3d 846, 850 (7th Cir. 2003) ("[S]elf-inflicted wounds are not irreparable injury."); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) ("If the harm complained of is self-inflicted, it does not qualify as irreparable.").

Plaintiffs' harm from a stay is either speculative or self-inflicted. But the irreparable harm that the injunction inflicts on the public interest and the State tilts the balance of harms sharply in favor of a stay. When the State seeks a stay pending appeal, "its interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam) (citation omitted).

## III. The Court Should Enter a Temporary Administrative Stay While it Considers This Motion.

For the reasons set out above, the Attorney General is entitled to a stay pending appeal. The Attorney General further requests that the Court immediately enter an administrative stay while it considers this motion. Such administrative stays are routine. *E.g.*, *TDP v. Abbott*, No. 20-50407, 2020 WL 2616080, at *1 (5th Cir. May 20, 2020) (per curiam); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 227-28 (5th Cir. 2020). In the absence of a stay pending appeal, a temporary administrative stay will prevent irreparable harm to the Attorney General while the Court considers the motion for a stay pending appeal.

## Conclusion

The Court should immediately enter a temporary administrative stay while it considers this motion and then stay the district court's injunction pending appeal.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/ Judd E. Stone II
Judd E. Stone II
Solicitor General
Judd.Stone@oag.texas.gov

Michael R. Abrams
Eric J. Hamilton
Assistant Solicitors General

Counsel for Defendant-Appellant Ken Paxton, Attorney General of Texas

## Certificate of Compliance with Rule 27.3

I certify the following in compliance with Fifth Circuit Rule 27.3:

- Before filing this motion, counsel for Appellant contacted the clerk's office and opposing counsel to advise them of Appellant's intent to file this motion.

- The facts stated herein supporting emergency consideration of this motion are true and complete.

- The Court's review of this motion is requested as soon as possible, but **no later than Friday, November 26.** The Attorney General respectfully requests an immediate temporary administrative stay while the Court considers this motion.

- True and correct copies of relevant orders and other documents are attached as exhibits to this motion.

- This motion is being served at the same time it is being filed.

/s/ Judd E. Stone II
Judd E. Stone II

## Certificate of Conference

On November 22, 2021, counsel for Appellant conferred with counsel for Appellees, who stated that Appellees oppose the relief requested in this motion and will file a response in opposition to the motion.

/s/ Judd E. Stone II
Judd E. Stone II

## CERTIFICATE OF SERVICE

On November 23, 2021, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Judd E. Stone II
JUDD E. STONE II

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,449 words, excluding the parts of the motion exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Judd E. Stone II
JUDD E. STONE II

19